UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VALERIE DAPREMONT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2673** |
| **SUPERVALU, INC., ET AL.** | **SECTION "K"(2)** |

## ORDER AND REASONS

Before the Court is a Motion to Remand (Doc. 6) filed by plaintiff seeking to have this suit remanded to the Civil District Court for the Parish of Orleans, State of Louisiana. Plaintiff maintains that defendant Moran Foods, LLC d/b/a Save-A-Lot, Ltd. ("Moran") failed to remove this matter timely as required by 28 U.S.C. § 1446(b). Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds merit in this motion.

**Background**

On April 11, 2013, Valerie Dapremont allegedly tripped and fell due to a piece of wood that was protruding from beneath a produce display in an aisle at defendant's store. (Doc. 5-1, Petition for Damages, ¶ II). The instant suit for damages was filed on February 6, 2014. No specific dollar amount is pleaded, as it is prohibited under Louisiana law to do so in a petition; however, paragraph IV of the petition states that pursuant to La. Code of Civ. Proc. art. 893,"her individual damages could exceed the specific amount of damages necessary to establish the right to a jury trial." This statement means that plaintiff seeks at least $50,000.00 in damages. La. Code of Civ. Proc. art. 1732.

She alleges that as a result of this accident she "was caused bodily injuries, including, but not limited to her head, arms, teeth and face." (Doc. 5-1, Petition for Damages, ¶ VI). She seeks past, present, future physical and future mental and physical suffering along with past and future

medical expenses and loss of income.  *Id.* at ¶ 8.  A First Supplemental and Amending petition was filed on March 21, 2014 correcting the corporate name of the defendant.

On **June 3, 2014**, Plaintiff's counsel provided Plaintiff's medical records which included notations from her treating orthopedic surgeon, Dr. Benjamin Guevara.  (Doc. 7-1).  In these documents, as of **September 4, 2013**, Dr. Guevara noted:

> She now has a lot of pain again particularly with raising her arm above her head or trying to get dressed.  She rates her pain as a 0/10 today but up to 6/10 with certain activities.  **The MRI showed a large retracted rotator cuff tears of the entire subscapularis, supraspinatus, infraspinatus with possibly very little remaining fibers of the teres minor.**

(Doc. 7-1 at 48 of 82).  On this same date, he noted that the MRI of the right shoulder showed "large full-thickness tear involving much of the supra humeral rotator cuff.  His assessment of that day states:

> I Spent (sic) a long time discussing rotator cuff tearing with the patient today.  The patient has a massive rotator cuff tear that is likely not repairable.  She has surprisingly good strength and range of motion with very little pain considering the extent of her injury.  I recommended some physical therapy for her shoulder, since I do not know if I could fix this.  We also briefly discussed arthroscopic debridement versus repair and then ultimately a reverse shoulder arthroplasty.  She'll followup in about 6 weeks.  I gave her a prescription for physical therapy in New Orleans east.

(Doc. 7-1 at 49 of 82).  Thus, it appears these documents which were produced to defendant on **June 3, 2014,** provide the first indication that a rotator cuff injury had occurred that could result in surgery.

She apparently then had an acute flare up on **January 13, 2014,** at which time she met with Dr. Guevara who recommended a cortisone injection which she accepted.  On January 22, 2014 she apparently contacted the doctor to tell him that the injections had not eased the pain.  (Doc. 701 at 60 of 82).

2

On **June 3, 2014,** responding to an interrogatory propounded in the litigation as to whether she in good faith contended that her damages reach or exceed $75,000.00 for federal diversity jurisdiction purposes, stated as follows: "Objection.  Plaintiff responds, she is not legally qualified to determine if her cause of action exceeds $75,000.00.  Further answering, plaintiff is still under treatment for related injuries and is unable to quantify her damages." (Interrogatory and Answer No. 22, Exhibit F, Doc. 1-7) at 6 of 8).  In addition, in her Answers to Interrogatories, plaintiff itemized only $2,958.00 in medical bills.  ((Doc. 7-3, Interrogatory No. 14, at 4 of 8.

On **June 20, 2014**, Dr. Guevara again treated plaintiff and his notes of this day state as follows:

> Assessment: Right Massive rotator cuff tearing
>
> Plan:  I Spent (sic) a long time discussing rotator cuff tears with the patient today.  The patient has a massive rotator cuff tear that is likely not repairable.  She has surprisingly good strength and range of motion with very little pain considering the extent of her injury.  We Had (sic) a long discussion about reverse total shoulder arthroplasty.  We discussed that this is mainly an operation for pain.  He (sic) is not to give her more strength.  He (sic) will not make her rage of motion better in fact it will likely make it a little more limited.  I recommended that she do some research and talk to some other people prior to having a surgery like this.  The only other real Option (sic) would be an arthroscopic debridement procedure.  She does not want any more injections.  I did put her on Mobic 7.5 mg daily.

These records were obtained by defendant on August 13, 2014,[1] and thus defendant was again made aware that surgery could result.

Without citation to the specific language which triggered in defendant's consideration that the amount in controversy was more than $75,000, defendant maintains that it was only at

---

[1] In plaintiff's Motion to Remand, plaintiff states, "On August 13, 2014, defendant, Moran again obtained its own set of records from Ochsner/Dr. Guevara via Plaintiff's signed authorizations."  (Doc. 6-1 at p. 3 of 8).

3

Plaintiff's deposition on October 28, 2014, that it "first ascertained" that the case had become removable. (Doc. 7 at p. 7 of 11). A review of that testimony confirms only that plaintiff testified that she knows that surgery is a possibility and that she would be in favor of seeking a second opinion.   Indeed, she stated, as concerned surgery, "We didn't go into any detail because I have not gone back to tell him that I would even opt for the surgery."   (Dep. of Valerie Dapremont, Doc. 7-4 at 53-54 of 90).

On November 4, 2014, counsel for defendant wrote to plaintiff's counsel indicating a willingness to pursue settlement of the claim and asking whether she was willing to stipulate that damages were below $75,000.  (Doc. 7-5).  Counsel for defendant stated that counsel for plaintiff "indicated he could not stipulate because he learned in the deposition that his client continued to have problems and that he was going to send her for an evaluation by an orthopedic surgeon in Metairie." (Doc. 7, at 5 of 11).

The case was removed on November 21, 2014, within 30 days of the deposition.  The instant motion to remand was filed December 9, 2014. A Supplemental Memorandum in Opposition was filed by defendant on January 8, 2015.  Attached to that document is a letter from plaintiff's attorney dated November 17, 2014.  The letter states, *inter alia*, "Ms. Dapremont will be seen by Dr. Junius in the near future.  Until then, I am unable to discuss settlement. Pending the results of this appointment, the damages may exceed $75,000.00."  This letter only confirms precisely what was learned in the deposition which was the same information that was contained in the medical records received at the earliest in June of 2014 or at the latest August of 2014.

**Analysis**

A defendant may remove a civil action filed in state court if a federal court would have original jurisdiction over the suit. 28 U.S.C. § 1441(a). Section 1332 provides for diversity subject matter jurisdiction over actions in which the plaintiff and the defendant are not citizens of the same state and there is more than $75,000 in controversy. 28 U.S.C. § 1331. Section 1446(b) of the Federal Rules of Civil Procedure provides the procedure for removal:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b) (2015).

The removing party bears the burden of establishing the existence of federal jurisdiction. *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The jurisdictional facts supporting removal are examined as of the time of removal. *Associacion Nacional de Pscadores a Pequena Escalal o Artesanales de Columbia ("ANPAC") v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), *rev'd on other grounds,* 119 S.Ct. 1563. Moreover, a case must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

As noted, Louisiana law prohibits a plaintiff from pleading a specific amount of monetary damages. La. Civ. Code Proc. art. 893. "When the plaintiff has alleged an

indeterminate amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. "    *Buchana v. Wal-mart Sores, Inc.*, 1999 WL 1044336, *1 (E.D.La. Nov. 17, 1999) citing *De Aguilar v. Boeing co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).  Where it is not facially apparent from the petition, a defendant must submit "'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds $75,000." *Id.*

As stated by Judge Lemmon in *Pichon v. Boyd Brothers Transportation Co., Inc.*, 2013 WL 3187298 (E.D.La. June 20, 2013):

> In *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992), the United States Court of Appeals for the Fifth Circuit held that the thirty-day period for removal provided by § 1446 begins to run at the receipt of the initial pleading "only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."  Therefore, if the plaintiff "wishes the thirty-day time period to run from the initial pleading," he or she must specifically allege that his or her damages exceed the jurisdictional threshold for federal diversity subject matter jurisdiction.  *Id.*  In adopting this rule the court stated that the rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know.  *Id*. . . .

*Id.* at *3.  This requirement was recently reaffirmed in *Mumfrey v. CVS Pahrmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013).  The circuit court stated:

> In our seminal case on timeliness disputes, *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Ci9r. 1992), this Court held that the thirty-day removal period under the first paragraph is triggered only where the initial pleading "*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 163 (emphasis added).  The *Chapman* court specifically declined to adopt a rule which would expect defendants to "ascertain [ ] from the circumstance[s] and the initial pleading that the [plaintiff] was seeking damages in excess of the minimum jurisdictional amount." *Id.*

*Mumfrey*, 719 F.3d at 399.

Clearly, in this instance, there was no such clear indication in the Original or the Amending Complaint that the matter in controversy exceeds the $75,000.00 jurisdictional threshold. Thus, the inquiry must focus on subsection (3), that is when did it become clear that defendant received "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable"?

With the receipt of the first set of medical records in June of 2014, defendant knew that there was a significant a tear in the plaintiff's rotator cuff and that surgery was a possibility.[2] Likewise, with the receipt of the August, 2014 medical records, defendant was on notice of the tear and the possibility of the surgery.[3] So, defendant's claim that at the deposition of plaintiff, it obtained new information that made it clear only then that plaintiff's claim was in excess of $75,000 is unavailing at best. No "new" information was obtained at that deposition.

Plaintiff has consistently known that surgery was a possibility and has consistently sought alternatives. Defendant has long known of these circumstances. The information upon which defendant seeks to remove this matter was in its possession at least as early as August of

---

[2]The records state, "She has surprisingly good strength and range of motion with very little pain considering the extent of her injury. I recommended some physical therapy for her should, since I do not know if I could fix this. We also briefly discussed arthroscopic debridement versus repair and then ultimately a reverse shoulder arthroplasty. She'll followup in about 6 weeks. I gave her a prescription for physical therapy in New Orleans east." (Doc. 701 at 49 of 82).

[3] The records state:
Spent (sic) a long time discussing rotator cuff tears with the patient today. The patient has a massive rotator cuff tear that is likely not repairable. She has surprisingly good strength and range of motion with very little pain considering the extent of her injury. We Had (sic) a long discussion about reverse total shoulder arthroplasty. We discussed that this is mainly an operation for pain. He (sic) is not to give her more strength. He (sic) will not make her rage of motion better in fact it will likely make it a little more limited. I recommended that she do some research and talk to some other people prior to having a surgery like this. The only other real Option (sic) would be an arthroscopic debridement procedure. She does not want any more injections. I did put her on Mobic 7.5 mg daily. (Doc. -1 at p. 71 of 82)

2014, if not June. Defendant did not remove the matter until November 21, 2014, well after the thirty day requirement. As such, the Court finds that the case was removed untimely under the provisions of 28 U.S.C. § 1441(b)(3).

Moreover, defendant has not carried its burden of proof as to jurisdictional amount. A review of cases demonstrates that there being a possibility of surgery for a torn rotator cuff, does not satisfy defendant's burden of proof that the amount in controversy is definitively more than $75,000. *See Carter v. E-Z Mart Stores, Inc.*, 2009 WL 1788541, at *3 (W.D.La. June 23, 2009); *Speigel v. Alvi,* 2009 WL *1209012,* at *1 (E.D. La. May 1, 2009); *Buchana v. Wal-Mart Sores, Inc.*, 1999 WL 1044336, *3 (E.D.La. Nov. 17, 1999) and cases cited therein.[4]  Accordingly,

**IT IS ORDERED** that pursuant to 28 U.S.C. § 1447(c), Valerie Dapremont's Motion to Remand (Doc. 6) is **GRANTED**, and this matter is **REMANDED**  to the Civil District Court for the Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this 14th day of April, 2015.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE

---

[4]*Coutee v. State Farm Automobile Ins. Co.*, 664 So.2d 542, 545 (La. App. 34d Cir. 1995) ($14,000 general damages and $6,000 medical expenses for complete rotator cuff tear with no surgery and injury to previous hip replacement; *White v. Longanecker,* 637 So.2d 1213, 1217, 1219 (La App. 1st Cir. 1994) ($35,000 general damages and $14,409 meidcal expenses for severe shoulder injury requiring surgery and otehr injuries); *Celestine v. United States Fidelity and Guaranty Co.*, 561 So.2d 986, 992 (19. App. 4th cir. 1990) ($10,000 general damages and $10,448.20 special damamges for strained neck and shoulder injury requiring invasive surgery).